Good morning. May it please the Court. My name is Rochelle Barber. I represent Appellant Ralph Adamson in this case. The District Court increased Mr. Adamson's guideline sentence for images that do not constitute child pornography. Counsel, the images aren't in the record and there's photoshopping and photoshopping. I tend to look at a lot of photoshopped pictures. Photography is kind of a hobby of mine and I look at them and I think, too much photoshop. They've intensified the color too much. One sort of superimposition I can imagine here is obvious photoshopping. I guess the extreme would be like those amusement park things where you stand on the steps and stick your faces in the cutouts so that you and your family are the president and the vice president and that kind of thing. An obvious superimposition of a face on a picture of a different body. Another kind of photoshopping done by people who are really good at it, you can't tell that it's a composite. You can't tell it's been photoshopped. For example, you take the telephone wires out of the sky, you can't tell there were ever telephone wires in the sky with good photoshopping. And I've never seen that done with faces, but maybe it could be. Was it obvious or not obvious here? Your Honor, it was obvious. It was obvious? It was. And Judge Garcia said that. I'm surprised then you didn't show us the pictures. We don't have the pictures, Your Honor. Under Adam Walsh, only the government can possess the pictures. They did not put them in the record. It was incumbent on the government, if they thought that we were wrong in saying they were obviously photoshopped, to put them in the record. Why would the answer to the legal question matter or depend on the level of artistic competence? In other words, as I understand it, there's no doubt that the faces are recognizably the faces of actual particular children.  Okay. So if their faces, those recognizable faces, are superimposed on pornographic images of adult behavior, is it your argument that it matters whether that's done well or poorly? And if so, where do you see that in the statute or in the constitutional limits on the statute? Your Honor, it matters for both. Under the statute, the resulting image has to appear that the minor is engaging in sexually explicit conduct. An image like Judge Kleinfeld mentioned where someone appears to be, puts their face on the face of a dragon, that person doesn't appear to be a dragon. It's obvious that they're not. That's certainly one manner of reading the statute. And, Your Honor, so that's the statutory construction that we are asking the Court to look at, because to do otherwise goes directly into First Amendment territory. Why is that the case? I mean, it seems to me that the interest that the Supreme Court recognized when it said that mere computer-generated imagery where no real people are involved is straight-up expression. But once you involve actual children, there's an effect on them as individuals. And in a child who comes across one of these images of himself or herself, why isn't Congress allowed to speak to the damage that could occur to that child from seeing himself or herself used in that way? Well, there's several different issues Your Honor brings up. One is that Mr. Adamson's conduct and these images were private. They were never intended to be shared with anyone. They weren't distributed. They weren't posted. So, therefore, that theoretical harm to this, the person whose face was put on the images, who, by the way was used. That doesn't get you very far. If he had, you know, made the, if he had abused the children in the process and had actual photographs of their bodies in the entirety, it wouldn't matter if nobody else had them. It would still be unlawful on his computer, wouldn't it? Well, I think, Your Honor, that begs the question. If the issue, if the reason. Well, you were arguing privacy. You were saying he didn't share it. And I'm saying I don't see where that matters. But if the harm to the child, or in this case to the adult whose picture of her as a child was used in these images, if that harm is sort of a feeling of being used or a feeling of being hurt, that harm is not realized until those images are distributed or shared in a way that she would know that they're being used in that way. So if he had had a peep camera and taken naked pictures of these children through their windows and they didn't realize it, that would be protected by the First Amendment under your theory. Well, Your Honor, if they were lewd and lascivious, that's different, because the Ashcroft holds that those types of images are a result of the underlying abuse of a child. And Ashcroft clearly leaves the door open and leaves it open for this Court to decide if images that do not result from the underlying abuse of a child, such as images in this case where the underlying images were legal adult pornography, can possibly be considered child pornography under the Constitution if they're morphed. And Ashcroft talks about morphing, but what we have here is slightly different from morphing. The reason I ask is we're supposed to engage in constitutional avoidance when possible. Yes, Your Honor. And the reason I ask the question that I did is that this definition of child pornography under the 2256A-C says, such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct. And I read the word appear to mean it looks as though the kid is engaging in sex. If it doesn't look like that, if it looks like a child's face has been superimposed on an image of adults engaging in sex, then it doesn't appear. So that's why I kind of wanted to know what we were talking about. And I absolutely concur, Your Honor. And it was always presented to the district court in that way. So it would be nice if we could avoid deciding a constitutional question. I agree. And, Your Honor, that's the government concedes on page 11 of their brief. This is true. They do not dispute the characterization of the composite images, that they were obviously adults engaging in sexually explicit conduct with a photograph of a child's face pasted over where the adult would be. And our argument of the government's brief to this Court. On that point, let me ask you a question. In paragraph 21 of the pre-sentence investigation report, and I think this is also reflected in the record, as well as at paragraph 35, it talks about 6,000 images of suspected preteen and teen child pornography and child erotic located. Are those the same images as the ones you're talking about? It sounds to me from the pre-sentence report like you have the 7,000 or 9,000 manipulated pictures, and then there are pictures. You agree that 53 of them are of actual child pornography and say there's no more than 150. But was there ever determination about those images or are they always morphed or? In the lower court, defense counsel discussed these images and broke them down. And there were 53 images that we concede qualify as child pornography. They resulted from the actual abuse of children. Though there were duplicates among those 53, we know that they qualify for sentencing under the sentencing guidelines. Did the government concede that there were fewer than 150 actual images of child pornography in that group of 6,000 or whatever? You made the argument that some of them were adults, that some of them were not pornographic, that they were just photos from beauty pageants or whatever. I did not see the government come back and say, no, that's wrong. That's correct. The government only came back and said, these Photoshopped images, there's more than 600 of them. I would like to go, and I want the government to talk about that. But I have one more question that relates to what Judge Kleinfeld was asking you about. Section 8 of 2256 gives three possible definitions of child pornography, and it's A, B, or C. In B, the visual depiction that is indistinguishable from that of a minor engaging in sexually explicit conduct. And then in 11, they describe indistinguishable. And I'm paraphrasing now that it looks real, basically. But that is not in C. So I'm wondering how we can read C to require the indistinguishable or artistically wonderful morphing that is otherwise described in B. In other words, it seems to me that Congress was making a distinction between the artistically wonderful in B, the ones that look real, and in C, they were not requiring that. So why shouldn't we read them differently? Well, Your Honor, I think it's a messy statute in part because of Congress's reaction to Ashcroft. The way I read A, B, and C is that they can cover some of the same conduct. For example, in B, you have visual depiction that is or is distinguishable from. Well, if the visual depiction is that of a minor engaging in sexually explicit conduct, A also applies. Well, that begs the question that I'm concerned about, though, which is that only B requires indistinguishable. That is, it really, really looks like it is, not just some looser, appears that an identifiable minor. And I wonder whether we can read indistinguishable into C where it doesn't say that. That goes to constitutional avoidance, which, if the Court doesn't read, appears to be as really it appears to be a child. It's morphed. It looks like a child's body. Either the child's body has been morphed to look naked or an adult body has been morphed to look like a child's something. To actually make it appear to be child porn, it simply walks right into the First Amendment issue. Why shouldn't we remand this and tell the district judge to look at the other pictures and tell us whether it gets over 150 with the other pictures? The Court can do that, absolutely. And if the Court agrees with my position, the issue will have to be remanded for resentencing anyway. If we do that, we avoid making a constitutional decision. Yes, Your Honor. And we avoid interpreting a statute so that we don't have to get all twirled around on whether appears means appears or something less or something more. But I do think that the district court needs clear guidance, and you can see some confusion even in the district court's formulation of that. We sort of like the Lane giving them guidance on touchy issues until they decide fast. Well, yeah. Your Honor, I agree this could be remanded. There are two separate stacks of images. One doesn't involve the morphing at all. And I think Judge Kleinfeld's question had to do with whether there are more than 600 of those, and the Court has not really made a specific finding about that. Your Honor, there are 53 images. Well, there are 53 images that you conceded and that involve children whose names are known or specific identities are known. But that is not the universe of possible offending images. They don't have to be identifiable in the sense of knowing their name or anything else. And the trial court didn't specifically make a finding about the other 5,000-some-odd. What we're getting at is there are three collections. Yes. There's the 53 that are child-born, period. There are a bunch of morphed ones that are or are not, depending on how we read the statute and the Constitution. And then there's a bunch of images we don't really know much about and that may give us big enough numbers so we never have to decide anything about the morphed ones. Your Honor, I don't think there's more than 150. I know there's not more than 600. So you would love to have a remand? I would, because I don't think the government can meet its burden on that. I'd never try, frankly. Well, let's hear from them because your time has been exceeded, but mostly taken up with our questions. Good morning, Your Honor. It's Brian Enos on behalf of the United States. I'd like to begin my presentation trying to answer all of these concerns that have just been raised. It sure is funny that you didn't give us the record with the pictures, since the whole question is whether they make it appear that an identical viable minor is engaging in sexually explicit conduct. And maybe the answer is you've conceded in your brief that they – let's see the words. You've conceded that the pictures are obviously adults engaging in sexually explicit conduct. That's true. Nevertheless, that still qualifies under 8C. If I can step back just one half-step, let me tell you why 8C. You know, the rule of lenity requires us, if a statute is subject to two possible readings, to choose the reading that would make the defendant innocent. That's fine, but nevertheless, I think. It's not just fine. It's the law. Fair enough, but I have an answer for that. Go ahead with the comment. Okay. Judge Graber is on to something. There's two separate interests involved, two separate subsets of images involved, both with 8B and 8C. If you read up here, as Your Honor appears to be reading it, which is indistinguishable from what you're doing is swallowing 8C. I didn't say indistinguishable. I said appear. Okay. Because that's the word that Congress used, appear. Well, it doesn't even have to convince the viewer, because what we have here, what 8C does is it. Well, you could have some images where you get where, gee, looks like that kid is having sex on TV there. That's really outrageous. And then you get expert witnesses saying, no, no, no, it's distinguishable. Let me show you. You look up here in the left corner and here and here. It's distinguishable. Well, Congress gives us C, and they say it doesn't matter if it's distinguishable or indistinguishable. What matters is it appears that an identifiable minor is engaged in sexually explicit conduct. So the experts just don't matter there if it looks to the jury like it's a minor engaging in sexually explicit conduct. And what I want to know is what do you mean by appear that? And I think you've conceded that it doesn't appear that. No. What I've conceded is it doesn't necessarily have to convince the viewer of that. What appear means is sufficiently to address those images where the perpetrator's sexual interests in the kids are still advanced, but nevertheless the kids haven't either been forced to engage in sexually explicit conduct either through images or movies or be computer generated in a way where it's absolutely indistinguishable from what has happened, like was in the Bok case where a 13-year-old head was put on a 13-year-old body. Let's get away from the photoshopping issue a minute because the words of your concession don't seem to require it. The words of the concession have to do with a photograph of a child's face pasted over where the adult's face would be. If you have a picture of people who are obviously adults and you don't have a fancy photoshop job, just cut and paste with the scissors and some, well, Elmer's glue, so it's obviously a child's face pasted on the adult. Is that enough for 2256HC modified to appear that an identifiable minor? Yes. So long as a reasonable person looking at this image realizes that it's sufficiently close to perpetuate the sexual attraction of the perpetrator to the children, in this case, that he knew, that he actually knew. So it doesn't have to appear to a reasonable person to be a minor engaging in sex. It just has to be something that would turn on a pedophile. That's one of the interests, because stepping back, the interest that we're looking at here is the kids. You're talking about the underlying interest that you think the statute protects, though, rather than the words of the statute. I think that Congress knew that in ---- I think a pedophile might be turned on by a picture of children fully clothed playing on the swings. I don't exactly know how that would feel. But HC doesn't address that. For example, if I have a stick figure with my son's hat on it, I don't think anyone's going to reasonably say, hey, that's him engaged in sexually explicit ---- Well, a pedophile might be turned on by a cartoon that's obviously a cartoon. I understand that. But HC doesn't address that necessarily either. No, it just says appear that. I have another question that also relates to the issue of whether we can avoid deciding a difficult constitutional claim or not. There were, I think as one of my colleagues said, sort of three piles of images. There are the morphed images that we're talking about now. There are the 53 that have been conceded to be child pornography. And there's some 5,000 plus that were introduced or at least were referred to in the PSR as having been child pornographic images. And here's my question to you. With respect to that last category, the non-53 and the non-morphed, that is the other photographs, I understood the defendant's argument in the district court to be those other images are not child pornography. They're either adults or they're not pornographic. And the government didn't respond to that, which ordinarily would constitute a waiver or a concession. What is your position on those additional images? Were there other child pornographic images there? And if so, why didn't the government raise that argument? Or are we stuck with 53 plus morphed? Well, my reading of the record is that we had the preponderance to show that the extra enhancement applied, the 600 plus. And it was based in large part on paragraph 35 of the PSR, which says there's actually over 9,000 manipulated images appeared as child pornography and 6,000 preteen and teen child pornography and erotica. Therefore, the five-level increase isn't recommended. Okay, well, I may have misunderstood what they said, but my question to you remains. We still have three categories, and I'm not going to put any numbers on them. We have the small number that are conceded to be child pornography. We have a whole bunch that are morphed. And there's a third category of things that are not admitted to be child pornography and not morphed. At least that's what the defendant's sentencing memorandum said in the trial court, that there were additional images that were not morphed but that also were not child pornography. Is there such a category in your understanding of the record? Not morphed and not child pornography would be child erotica, which would not be counted. Okay, so let me see if I understand it. So you're conceding that the only way you can get to 600 plus is through morphed images. That's correct. Well, my understanding of the record is there's 53 we all agree about, and then there's 6,000 morphed images per paragraph 35 of the PSR. Of that, there include both preteen and teen child pornography and erotica. The PSR applies to 500 or, I'm sorry, the plus 5, which means of those 6,000, at least 547, which would get us to the 600, are child pornography. So I'm confused about this. I thought there were three classes of images. There's 53 that are morphed. They're not morphed. Or 53 that are not morphed and that are child pornography. And then there are a bunch that are morphed and that are the subject of your concession at page 11 of your brief, that they're obviously adults with photographs of child's faces pasted on them. And then there's a large class where the pre-sentence report, which you rely on, says there's plenty of child pornography in there, and the defendant asked for a finding of fact because the defendant claimed that they were not child pornography, and the judge did not make a finding of fact because the judge thought that the morphed images were sufficient. That's what I thought, but I may have misunderstood. Well, my reading in the record is on page 13. Let me answer both sides of your question. I'll get to the punchline here and then explain the joke. The Court says I'm going from the probation officer's report. It's in the report, and you filed no factual objection to those portions of the report. That's on page 35. So I'm not sure there is a factual objection made. As far as the categories, there's the 53 everyone agrees about, images sent to NCMEC, known victims, you know, so on and so forth. So the question is how do we get the extra 547 to justify the plus 5? Of that, there's 2A. There's subcategory 2, which is morphed images. There's 2A, which is child pornography, and 2B, which is erotica. That's how I'm reading paragraph 35, so I may have misspoke with Judge Graber earlier on. I'm not sure there's non-morphed erotica. But if there is, it wouldn't be in the probation reporting. I'm just trying to figure out if there are. I may not be just — I'm not communicating very well, I guess. I'm trying to figure out if there are other images. This is made difficult by not having the images here. That's what makes it very hard for us to figure it out without asking all these detailed questions. I'm trying to figure out if we eliminate the morphed images from our consideration and we eliminate the 53 that are conceded, are there any images left? I don't think so. Not of child pornography. I think there were objections to the PSR. I've got them in my hand, actually. Yes. Can I ask you, did the judge ever look at any image in the case? He did not. What he did was he relied on what was stated in the PSR and then noted that the defendant didn't object to them. But he did. But he did object to them. I mean, even if it's the morphed images, did the judge look at those images? He did not. Well, how can the judge make a fact-finding under Rule 32 under the contested factual disputes without ever looking at the record? I mean, I've not seen any of these images, not that I want to, and the judge never saw them. Apparently, the U.S. attorney saw them, the defense attorney saw them, the defendant saw them, and the probation officer. Did he or she see them? I don't know if he or she saw them or not. Well, how do you have a fact record that's based on nobody looking at anything unless it's all conceded? What Judge Garcia did was look at paragraph 24 of the PSR. I know. Which gets very graphic, so I'm going to try to spare the Court unless it would like me to go into how graphic it is. No, I know. I read it. Okay. But it includes images involving his stepdaughter, images of him having ---- Look, disgusting isn't a crime. Child pornography is a crime. Right. And it says here, formal objections. It's paragraph 21. Mr. Adamson objects to the characterization of any images aside from the identified 53 images as child pornography. Paragraph 24, Mr. Adamson objects to the phrase collection of child pornography because as described above, the images created by Photoshop do not qualify as child pornography, objects to the term preteen girls as the age of those depicted as not and cannot be known, objects to the speculation of age. It looks like there are objections and the judge overlooked them and didn't make findings. I don't understand. Am I wrong on that? Well, I think it can be explained. I'm the last person to hear you're wrong on anything. No, that's what you're supposed to do. Well, no. What we have here is ---- You have one case. I have a lot of them. I can be wrong easily. Okay. We have a macro position that the Federal Defender made, which was unless it's indistinguishable from someone being sexually abused, it doesn't qualify. And then we have a more micro analysis from Judge Garcia saying, look, we have very specific descriptions here to which you do not object other than to say you ---- Wait. Yes. The descriptions are by the probation officer that wrote the pre-sentence report. Did the judge look at the pictures and decide whether what Adamson says here in his objections was correct? No. What he did was he relied on the descriptions and the fact that they were not objected to. You say this, the probation officer says that, I go with him. Well, and that they weren't objected to by defense. That's right. Defense is more than welcome to ---- That means we have to ignore when he says I object. Well, if you can object to anything, but the important thing is to say why you object. And what the defense did not do was say, Your Honor, you know, we're all familiar with the Adam Walsh Act. No part of it says that you can't give the judge what you object to as far as whether or not he's going to apply these images for a sentencing. But don't you have the burden of showing that they are, in fact, if you're seeking the enhancement, don't you have to come forward with the proof that establishes the foundation for the enhancement? The burden is a preponderance. And what we have is some evidence. It's not the images. But nevertheless, we have the PSR very specifically describing it. The PSR is not evidence once it's been objected to. Which is based on, my understanding is, on agent's descriptions. Look, this is silly. The PSR is an evidence. It's been objected to. The pictures are the evidence. Right. You keep telling us, well, that's what the PSR says. Well, I don't care what the PSR says because it's been objected to. Don't you think it's a problem for a judge to defer to a probation officer on a legal issue that is contested, that involves somebody's liberty? Yeah, I don't disagree with that. What do you think? You know that at least I have been toying, we don't confer before, and so you wouldn't know, I don't know whether anyone else is toying with the idea, of a remand to see whether he gets over the number of necessary images for the adjustment without the morphed images. Is such a remand, should we do it, or is it a waste of time? Because as the defendant says, and as I think you may or may not have conceded, I'm not sure there wouldn't be enough child pornography without the morphed images. I don't think it's necessarily inappropriate. However, I also don't think it's necessary. In light of what Judge Garcia did here, we're the reviewing court. We're not bound to follow Judge Garcia. What I want to know is are, do you concede that there are not enough child pornography images if we don't count the morphed images? Yeah, I think everyone agrees there's 53 non-morphed. Does that answer your question? No. I don't concede that even if you. The 53 child pornography, the morphed images, and the non-morphed images, are there enough child pornography images in the non-morphed images so that the number will be high enough for the upward adjustment and we would not have to decide whether the morphed images were child pornography? I don't believe so. Are you conceding that? Without having seen the images myself, I'm covering this. You haven't seen them either? I've not seen them. I'm covering this. Nobody – it's a case about dirty pictures? Nobody's seen the dirty pictures? The U.S. attorney – the assistant U.S. attorney assigned to this case, I'm sure, has seen them. He's on paternity leave now. I'm trying to – Well, it's your appeal. You read the record. I'm well aware of the record. That's right. But you haven't looked at the pictures you're litigating about. I've not looked at them. What I'm relying on, what's in the record. So you're not well aware of the record. You don't know the record. I'm aware of what's in the – And the judge doesn't know the record. I'm aware of the excerpts of records. I hope the probation officer looked at the pictures, but I guess I don't know. Thank you, counsel. You've exceeded your time, and we've used quite a bit of it with questions. You also exceeded your time, but you may have a minute for rebuttal if you want to. I'll submit all my questions. Thank you, counsel. The case just argued is submitted.
judges: Molloy, Kleinfeld, Graber